Case number 314-0635, people of the state of Illinois, appellate by Judith Kelley v. Axne Rease, appellant by Sam Adams. If the court please. Good morning, your honors. My name is Sam Adams and I represent the claimant appellant in this case. Last time this case was before this court, this court directed the trial court conduct a motion to suppress evidence. It was remanded and we conducted that motion. The following facts are not in dispute by either party. On August 7, 2011, Trooper Kasparov was traveling along Route 80. The claimant appellant was also traveling along Route 80. The trooper followed him for a short distance and conducted an inquiry over his computer to determine if the car was stolen and it was not. At some point, the Nissan which was driven by the appellant went over the center line about a foot for one or two seconds and then back into his regular lane. The trooper activated his lights. The claimant immediately stopped. He produced a proper rental agreement for the car. He produced a valid driver's license. The trooper took the driver's license and checked his computer with it. There were no warrants for the complainant at all. There was no violation of any kind except for the traveling for one or two seconds over the center line. The computer also showed that the appellant had no record of any kind, no criminal record at all. And so the trooper wrote a warning ticket for going over the center line. At that point, after he wrote the warning ticket, he gave back the driver's license, he gave back the rental agreement, he issued the warning ticket for going over the center line, and at that point, after all that was done, the traffic arrest was completed, he then asked the appellant, could I search the car? The appellant denied that he had any guns or any contraband of any kind, but he said yes, you could search the car. Inside the front seat on the floor was a backpack, inside the backpack was a shoebox, inside the shoebox was a large amount of money. The appellant was then handcuffed behind his back, he was searched, no contraband was found of any kind, no weapons. The trooper then called for assistance, a backup trooper arrived, drove the Nissan to the police station. The appellant was taken in handcuffs in the original trooper's car to the station, when he got to the station, he was handcuffed to a bench, and there he was interrogated by the officers about the money. His answers were that he was going to see his grandmother in Denver, the money was his personal funds, and he worked for the chemistry department for Loyola University in Chicago. After a period of time, and the record is not clear how long it took, but approximately two hours later, a dog by the name of Justice appeared and reacted to the money. The Nissan was searched, no contraband, no weapons of any kind found in the Nissan, only the money. The troopers then further interrogated the appellant and they checked on his employment and determined that his employment was in the chemistry department at Loyola University in Chicago. After about six hours, he was then released, free to go, but his money was confiscated. Now, the present law is very clear, I think. It started out initially in People v. Cummings, this very court. This court held, in essence, that when the traffic stop is over, it's over. When the purpose of the traffic stop is completed, and the license returned, and the rental agreement returned in this case, at that point, anything that occurs after that is not legal. That case, People v. Cummings, from this court, was affirmed by the Illinois Supreme Court in People v. Cummings. That's all found at page 18 of our brief. Now, the law in Illinois was pretty clear, but it is true that throughout the United States, it varied at different times in different places, particularly in the federal court and in the 8th Circuit. After Cummings was decided by the Supreme Court of Illinois, this court decided a case called People v. Abdur-Rahman, from this very court, in which there was a 52-minute delay between the arrest, the initial stop of the defendant in that case, and the return of the documents. And in that 52-minute delay, a dog was called, which reacted to the car. And a contraband was found in that case. This court held that the delay was unreasonable, even though the state attempted to justify the delay on the ground that the defendant in that case, in the Abdur case, was on the terrorist list by the United States, I guess, Home Security Department. He was on the terrorist list, yet this court held, in that case, a 52-minute delay in getting the dog was too long. Whatever the law was in the United States, as it varied from court to court, it changed in May of this year, two weeks ago. Two weeks ago, the United States Supreme Court decided Rodriguez v. United States. They made it clear for all the country, federal and state, that in that case, there was a 7-8-minute delay between the return of the original stop of the defendant and the calling of the dog. 7-8 minutes. Let me just ask you this, what happened during that 7-8 minutes in Rodriguez? They called for the dog. Well, what else, didn't the officer ask for consent to serve? Yes, he asked for permission to serve. And what did the defendant say? He said no. Okay, what did the defendant say here? He said yes, after the license was returned. That's correct. But, of course, the difference in that case was, they found contraband. No contraband was discovered here, at any point. Well, isn't that the issue here, is whether that money is contraband? No, I don't think so. How can the state see something that's not contraband? I don't know, but they did. The case law that I have found, and the state has not found anything to be contrary, is that the seizure of money alone is not justified. It cannot be justified unless there's some connection between that money that is shown at the time of the seizure. Between the money and drug offenses. Just seizing, just having money is not an offense. As I asked the trooper in this case, would you have seized $10? And his answer was no. At what point would he have seized money? We don't know. At some point, he would have made the determination, and he did make the determination. And there's no law that justifies it. But even if there were, Your Honor, even if there were, it's not justification for arresting the defendant because he had money. What they might have done, and I don't for a moment suggest that it would have been legal, but what they could have done is take the money, give him the receipt, and send him on his way. But there's no justification for handcuffing him, taking him to the police station, and holding him for six hours, and then releasing him. That's not the issue here today. I'm sorry, Your Honor? That's not the issue here today. No, it isn't. It's that the motion suppresses the issue. That's correct. Your Honor's correct, but I was trying to answer Joseph's question. Sorry. I just love to hear that I'm correct. You're correct, Your Honor. It is not the issue before the court. All right. At any rate, that's what the United States Supreme Court held. Quote, we hold that a police stop exceeding the time limit to handle the matter for which the stop was made violates the constitutional shield against unreasonable searches and seizures. Now, had they followed that, even if they had seized the money, the two things they would not have had, which were highly relevant at the forfeiture hearing, is they would not have had the statements of the defendant, and they would not be able to use the dog snare. They wouldn't be able to use either one of those. But they did, and that was the basis for which the forfeiture order was entered in this case. Your Honor? Why wouldn't they be able to use the dog snare? Because of the case. If they seized the money, couldn't they take it back to the police station? Why didn't Brown have a dog run up to it? Well, it would depend on, as I hope I suggested to you, it depends on whether the seizure of money is lawful. I can't find any case on it, and the State neither below nor here has cited one case which holds that you can seize money without anything connecting the money with anything. I mean, this is a pure case of just seizure of money. I mean, no contraband, no violation of any law except that minor traffic law, no warrants, employment, everything. He was just driving to Denver with some money. It was nothing that I know of, and I want to quote to you out of this from the United States v. 242,000. Carrying a large amount of cash can be criminal activity, but it is not illegal to transfer money in this way. That's on page 28 of our brief. All right, but for a reasonable, articulable suspicion to warrant further investigation, all you've got to have is a reasonable, articulable suspicion of criminal activity, and you're saying that carrying $150,000 in cash in a backpack in your front seat does not give somebody a reasonable, articulable suspicion that that money is the product of some criminal enterprise? I don't know. I would say no, Your Honor. I would say that as the Illinois Supreme Court held in People v. 1,124,000, the court said there must be a showing of a drug connection. The discovery of a large amount of cash without war is insufficient to establish probable cause. Now, that's on page 25 to 26 of our brief. That's from the Illinois Supreme Court, 1,124,000 they seized in that case, and the court said it is not even probable cause to seize that money without something wrong. Just the money alone does not justify it with all due respect to Your Honor's question. Thank you, again. You don't have to overrule me. All right, thank you, again. Now, the other error that was committed by the court we allege, and the fourth that you're hearing was the trial judge put the burden on the claimant. This is what she said. There is no explanation here, and there is no indication in the evidence that this money was in any way legitimate. Not where it came from, not where it is going, to a place unknown, not where it was packaged. Now, that was her finding. It completely transferred the law to the claimant to justify his own money. The reason this case is so different is in the state, in the brief, and... But, again, we're here on a suppression hearing, right? Yes, well, no, I read that from the forfeiture hearing. That was from the forfeiture hearing. Once we got over the denial of the motion to suppress, this is the finding on the forfeiture, Your Honor. She put the burden on the claimant. I'll ask the question in a minute. Thank you. So it is our position that Rodriguez has solved the issue about searches after a traffic arrest for the whole country. And that is, when it's over, it's over. Once he hands back that license, once he hands back that papers in the warning ticket, it's over. You can't prolong it. And in this case, the dog sniff was prolonged for three hours while the defendant, claimant, was in handcuffs to a vent in the police station. And obviously he didn't have any probable cause for holding because he was released. Here's an interesting point. What is the, the confluence is the right word, but where do you separate out criminal aspects of this? You know, both seizure and the motion to suppress and the civil aspects of it. Where does one leave off and take in? Well, what happened is, in this case, is we asked the trial judge to hold a motion to suppress evidence, and she denied it. And we appealed, and this court ordered her to do so. At that point, we held a motion to suppress, and she denied it. And then we had the forfeiture hearing. And the forfeiture hearing, which was, actually was stipulated that the same hearing she held previously would be the same evidence. That was held, and she then, she then made a finding of forfeiture of the money, and she based it on three things. She based it on him traveling on Route 80, on the dog sniff, and on the statements that he made to the police about his employment and so forth, which she said she did not believe. The trial judge said she did not believe it. So based on those three things, she said that under those circumstances, the money would be forfeited. It was our position then, and it is now, that had they not been able to seize the money because the traffic arrest was over, the dog sniff would never have been conducted, and neither would his statements. But in any event, even with a dog sniff, his statements should not have been admissible. His statements, which she did not believe, they weren't incriminating statements. It's simply that she did not believe them. Jeffrey Cooper did not believe that he was on his way to Denver. He did not believe he was going to see his grandmother. He did not believe the money was his. And it was just that simple. And I hope that answers Your Honor's question. Thank you. Thank you. Mr. Adams, you have five minutes for rebuttal. All right. Thank you, Your Honor. Ms. Kelly. Thank you. May it please the court, counsel. As Mr. Adams explained, this case had been here before, and it was remanded for the trial judge to hold a hearing on the motion to suppress. The trial judge did so and ruled that the, denied the motion to suppress. There was never a lot of explanation or parsing at that hearing as to what suppression, what statements were sought to be suppressed. Many of the statements to which Mr. Adams has referred were made to Officer Kasperick during the pendency of the traffic stop while the ticket was being written. For example, at the time that he was obtaining the information with regard to the driver's license and the status of the rental agreement, et cetera, they conversed in the car. There is a DVD in the record which explains, which actually has the whole conversation. But what the officer knew at the time that the traffic stop was completed was that the claimant told him he was on his way to visit his grandmother in a nursing home in Denver. And he, why didn't you fly? Well, I don't like to fly. I like to drive. I like to see the scenery. But this was the middle of the night. He stopped him at 1 in the morning, not a lot of scenery to be seen. And he told him that he had worked at, was working at Loyola. He was on vacation, three weeks vacation. They had this discussion. So within 11 minutes of the beginning of the traffic stop, the officer concluded the traffic stop by handing him back his license, the warning ticket, you can even hear it being torn, and telling him to try to stay between the lane markings. And then immediately upon giving him back the warning ticket, asked him if he had any drugs or weapons or any money related to drugs or anything in the car, at which point I believe the claimant said he had cash. He had about $1,000 cash for gas. And then he asked, then the officer asked if he could have consent to search the car, and the claimant agreed. So at that point, the traffic stop was over. The seizure had ended. As the people have explained in their brief, asking those questions following the conclusion of a traffic stop does not constitute a second seizure. The officer had obtained consent to search, went to the car, looked in the backpack, removed the items, and now was faced with more than $1,000 in cash, what looked to him to be more than $100,000 in cash, and bundled quite oddly, bundled in rubber bands, rolled up in rubber bands. So at that point, the officer had that information as well. And he decided that the money, to him, appeared to be contraband. It appeared to be, you know, given the explanation he was given about why this person was driving in the middle of the night with what turned out to be that amount of money in the car, he felt that the money was probably drug proceeds. And that's why he determined it to be contraband and seized the money. And the bulk of the hearing that they had of the motionist press below concerned what happened up to that point, up to the point where the money was found, and then they left the scene. The judge denied the motion. No one ever clarified which statements had come, say, before, which statements the trooper could testify to as the information he had received in the squad car and what came afterwards at the police station. After the motion to suppress was denied, the parties stipulated without elaboration that the statements would all come in and they would rely on the initial forfeiture hearing. And that's what happened. And then she gave the same ruling she had given at the initial forfeiture hearing. It's the people's position on appeal that the motion to suppress was properly denied, that the traffic stop lasted less than 11 minutes. This court has recently told us about 10 to 12 minutes is reasonable to conduct a warning ticket and traffic stop. The traffic stop was clearly concluded. He was given back his license. He was given the warning ticket. He was advised to stay within the lines. And then the officer asked a question, a consensual question right afterwards. And within a minute or two, the defendant agreed to the search of the vehicle. There was no second detention. There was no detention. The motion to suppress was properly denied in this case. Okay, when you say there was no second detention, wasn't he handcuffed? I'm saying that the officer's actions up to the point where he found the money did not constitute a second seizure. There were statements in an interview by Trooper Novotny. That's correct. And that was conducted? At the police station. And during that interview, the defendant said he worked at Loyola? I believe it's even on the tape. I think he told Officer Kasbrick he worked at Loyola. That was my notes when I reviewed them today from the first 12, 14 minutes of the DVD. Mr. Novotny did go into more detail. What is your position with respect to whatever he told the officer during the interview at the police station? Well, our position is that that's a different issue. And that that was not addressed in the claimant's brief. He captioned Issue 1, the suppression hearing, with A, B, C, and D. But he only addressed points A and B. And those points were with regard to the traffic stop. And that's what the people have addressed in their brief. He has cited no case law as to what happened at the scene after the trooper found the money. So the people have responded to the items addressed in the claimant's brief. But feel that if for any reason this court might feel that what happened afterwards was a problem, you would have to separate out the knowledge that the policeman had and then the evidence that also came out of the forfeiture hearing with regard to that. And still find that there would be enough to support the finding of the forfeiture. Much of the information that was developed that was given had also been stated to Officer Kasbrick. I do believe at the police station they went into more detail with regard to bank accounts. But the main outline of the information was there. Certainly the bundling of the money was there. That was all developed at the scene following the consent search. So the people feel that the motion to suppress was properly denied. And all the case law relied upon by the claimant does not support his position. I know it's been a while since he wrote the brief. And it's been a while since I looked at the record. Did the motion to suppress address statements to Trooper Kasbrick at the scene or Trooper Novotny at the police station? I don't believe they were ever very clear below what was being addressed. I think that was part of the problem. They never parsed out the different statements. And the ruling on motion to suppress, I believe the ruling was quite brief. Motion denied, something like that. So the record is not very clear on who was trying to keep out what statements precisely. As I read Rodriguez, the court didn't limit the holding of Rodriguez to merely to get a dog. As I read it, I think it's very clear from reading it that the court held that anything that prolongs the arrest after the traffic offense is over, after the traffic thing is over, is not constitutionally permitted. It isn't just to get a dog's arrival, although that's what happened in that case. It wasn't a dog sniff case. Anything, including asking him to search the car, anything after the traffic thing is not permissible under the Constitution. As I read Justice Grimsby's opinion in that. Let me ask you something. Yes, sir. Let's just suppose hypothetically I agree with your reading of Rodriguez. And we change the facts of this case just a little bit, and they say, okay, that was unconstitutional. But he gets the bag out of there, and it contains Claymore mines. So they say, well, you can't prosecute this fellow for possessing those Claymore mines because it was known as a seizure. Do you give him back the Claymore mines? I would say so. There's no reason to hold it. Is it contraband, whether it's seized legally or not? Well, the question then becomes, and it's a very interesting question your Honor asked, the question then is, what amount of money can they take? Everybody has money. Not everybody. Well, not everybody. Most people who travel on I-80 intended to go from Chicago to Denver have some money. Although, I guess you could do it on a credit card. But the question really is, how much can you take? There's no limits. There's no – and this is in the record. I guess my question is meant to be, even in a civil proceeding on a forfeiture, in other words, is any alleged constitutional violation that goes to the criminal action, is that relevant to whether one can possess contraband? And assuming for the sake of argument that the court properly ruled as contraband, isn't it illegal to possess contraband and so you don't give it back? Yes. If you make the assumption that the court properly labeled it contraband, I would say yes. That's correct. But the question was, is the seizure which led to the forfeiture proceeding, is that legal? Well, that's my whole point. Let's assume it's not legal. If you determine that what they seized was contraband, do you give it back? Because it's illegal to possess contraband. Give it back and then arrest them again for possession of contraband? Well, I understand your dilemma here. But if you don't have sufficient proof, and that's why we raised this on the second point, that it is contraband, then of course you give it back. As I'm saying, isn't the determination of whether or not it's contraband, isn't that, aren't those divorced from your… No, I don't think it's divorced. Let me answer it this way. If the determination that it's contraband is constitutionally legal, then you would have a question of whether you should give it back or not. But if you seize it illegally, like burglarizing a house and then you seize some contraband and some money in the house, and that turns out to be sufficient to cause a dog to sniff and all of those other things, I suppose it would be the same situation. Bank robbery, all kinds of constitutional violations, they get the money the guy stole from the bank. You still would have to prove it. Who gets the money, the bank robber? No, in that situation, and it's a good situation, in that situation you would have to make a legal determination that the money was contraband, was disposed of as a bank robber. Here you have the method by which you determine that it's contraband was a method which violated the constitution, that is to seize it and submit it to a dog, and most important of all, to arrest a man at 2 o'clock in the morning and take him in handcuffs to a police station and hold him for 6 or 7 hours, and then release him, and use his statements, which are not incriminating statements, to use his statements to prove that it's contraband. No, I don't think the constitution justifies that at all. Thank you, is there no other questions? Oh, I did want to make one point in answer to your Honor's question, to the State. There is a video of what occurred. It's part of the record in this case as to what occurred from the time the claimant was stopped until he was taken in handcuffs to the police station, and that's a part of the record, and I hope that answers your Honor's question. Thank you so much. Thank you, Your Honor. Thank you, Mr. Manning. Thank you both for your argument today. We will take this matter under advisement, effective at the written disposition. We're going to have a short day, and now we'll take a short recess for the panel.